**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
KAREN SPARKS,                                                                 Case No.

                Plaintiff,                        **COMPLAINT**

  -against-

                                                    **Plaintiff Demands a Trial by Jury**
MTA BUS COMPANY and
DONNETTE EVANS,
                Defendants.
-----------------------------------------------------------------X

Plaintiff Karen Sparks ("Plaintiff" or "Sparks") alleges against Defendants MTA Bus Company ("MTA") and Donnette Evans ("Evans") (collectively, "Defendants"), upon information and belief, as follows:

### PRELIMINARY STATEMENT

1. The Defendants discriminated against Plaintiff on the basis of her **race** and **disability**. Further, the Defendants retaliated against Plaintiff after and as a result of her complaints of Defendants' discriminatory conduct.

2. More specifically, in this action for monetary damages, Defendants violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§2000e-2000e-17 et seq. as amended) ("Title VII"), by unlawfully discriminating against the Plaintiff on the basis of her **race** and **disability** and by retaliating against the Plaintiff for complaining about said discrimination, in violation of §704(a) of the Civil Rights Act of 1964, as amended.

3. Plaintiff also complains for **disability** discrimination and retaliation pursuant to the American with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq.* ("ADA").

4. Additionally, Plaintiff alleges **race** and **disability** discrimination and retaliation pursuant to the New York State Human Rights Law, Executive Law § 296 et seq. ("NYSHRL"), and the Administrative Code of the City of New York § 8-101 et seq. ("NYCHRL").

1

## JURISDICTION AND VENUE

5.      This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the causes of actions brought under Title VII and the ADA and supplemental jurisdiction over the New York State and New York City law claims, as they are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

6.      Venue is appropriate under 28 U.S.C. § 1391 (b) and (c) (Substantial Part of the Events and Contacts) in the Eastern District of New York as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, the Defendant regularly conducts business in this district and the Defendant is subject to personal jurisdiction in this district.

## EXHAUSTION OF REMEDIES

7.      On September 8, 2020, Plaintiff duly filed a complaint with the New York State Division of Human Rights ("NYSDHR"), Case Number: 10209181-20-E-DRS-E, on the basis of **Race/Color** and **Disability**.

8.      On October 27, 2021, the NYSDHR issued a Determination After Investigation finding **PROBABLE CAUSE** exists to believe that the MTA and Evans have engaged in or are engaging in the aforementioned unlawful discriminatory practices.

9.      On June 23, 2022, Sparks respectfully requested that her claims be dismissed from the NYSDHR for administrative convenience, so that she may be allowed to pursue her claims privately by way of litigation.

10.     On August 15, 2022, the NYSDHR issued a Notice and Final Order, which granted Sparks' request of dismissal for administrative convenience.

11.     On August 15, 2022, Sparks requested a right to sue letter from the Equal Employment Opportunity Commission ("EEOC") so that she may file a lawsuit against the MTA and Evans under in federal court.

12. On October 11, 2022, the EEOC issued Sparks a right to sue letter.

13. Plaintiff has exhausted her administrative remedies and files this Complaint within 90 days of the EEOC's issuance of her Notice of Right to Sue, satisfying all procedural prerequisites for bringing this action.

## PARTIES

**Plaintiff Sparks**

14. At all times during her employment with Defendants and at the time of the filing of this action Plaintiff Karen Sparks ("Plaintiff" or "Sparks"), was a resident of Queens County, New York.

15. Sparks is an African American woman.

16. At all times relevant to this action, Sparks was an employee of Defendants within the meaning of all applicable statutes.

**Defendant MTA**

17. Defendant MTA Bus Company ("MTA") was and is a public benefit corporation duly organized and existing under and by virtue of the laws of the State of New York.

18. MTA was and is authorized to conduct business in the State of New York.

19. MTA was and is responsible for public transportation in the New York City metropolitan area.

**Defendant Donnette Evans**

20. Donnette Evans ("Evans") upon information and belief, was and is a resident of the State of New York.

21. Evans was and is an employee of the MTA.

22. Evans was employed by MTA as the General Superintendent of Support Services.

23. Evans was Sparks' Administration Manager during her employment with the MTA.

24. In that role, Evans had the authority to discipline Sparks, direct her work activities, assign her job responsibilities, monitor her performance, and recommend her termination.

## **FACTS**

25. On or about April 3, 2017, Sparks commenced her employment with MTA as a Bus Operator.

26. Sparks worked for the MTA at 85-01 24th Avenue, Elmhurst NY 11370.

27. In this position, Sparks regularly operated a bus, safely driving passengers from one place to another on a predetermined route.

Disability Discrimination & Retaliation

28. On or around October 2018, Sparks was diagnosed with Generalized Anxiety Disorder.

29. Due to this diagnosis, Sparks' therapist recommended that she drive a non-passenger bus to reduce her anxiety and stress.

30. On or about January 4, 2019, Sparks communicated with her Transport Worker Union, Local 100 representatives at the LaGuardia Bus Depot ("LGA Depot") and requested a reasonable accommodation.

31. While Sparks' reasonable accommodation request was pending, she was placed on unpaid leave from the MTA.

32. Sparks requested to be placed in a Restricted Duty Position.

33. Restricted Duty Positions are provided to employees who had or have a medical condition.

34. The Division Shifter position is a Restricted Duty position which requires driving a non-passenger bus and the only requirement for the position is a valid Commercial Driver's License.

35. Sparks requested that she be placed in the Division Shifter position.

36. The Division Shifter position does not require one to have the ability to drive with passengers.

37. Sparks has a valid CDL and meets all other qualifications of the position.

38. At the time of Sparks' request, there were at least three Division Shifter positions available.

39. On April 15, 2019, Sparks applied to receive unemployment benefits after her disability insurance had been exhausted.

40. MTA opposed Sparks' receipt of unemployment benefits, and appealed the decision to grant benefits, requesting a hearing form the NYS Department of Labor Appeal Board.

41. On or about June 27, 2019, Sparks sent a letter to Tony Utano, President of Local 100, requesting an update on her request for a reasonable accommodation but did not receive a response.

42. On or about July 9, 2019, during the unemployment appeal hearing, Evans made disparaging comments about Sparks' disability, comments of which are documented in Sparks' MTA Bus Company Employee Civil Rights Complaint Form.

43. Evans stated that Sparks was denied her reasonable accommodation request because Evans did not believe that Sparks' medical condition was legitimate.

44. Evans only granted reasonable accommodations to those employees whom she believed to have legitimate disabilities.

45. Sparks presented her medical documentation during the unemployment appeal proceeding which cleared her to work with restrictions.

46. The NYS Department of Labor Appeal Board denied the MTA's appeal and affirmed the decision to grant Sparks her unemployment benefits.

47. On or about July 10, 2019, Sparks again sent the MTA a request for a reasonable accommodation.

48. On or about July 28, 2019, Sparks sent a doctor's note to MTA certifying that Sparks is fit for full duty with restrictions of "no driving in passenger service."

49. On or about August 5, 2019, Sparks was cleared to work in the Restricted Duty Position, driving a bus without passengers by the MTA's Medical Assessment Center.

50. On or about August 12, 2019, Evans informed Sparks that there are no Division Shifter positions available and that Evans would email Sparks weekly if the position became available.

51. The MTA denied Sparks' request for a reasonable accommodation.

52. The MTA discriminated against Sparks because of her disability by failing to accommodate her.

53. Evans would repeatedly state that there were no Division Shifter positions available for Sparks.

54. Upon sincere information and belief, despite Evans' claims to the contrary, there were Division Shifter positions available at the time Sparks made her reasonable accommodation requests.

55. On or about August 20, 2019, Sparks filed an internal complaint with the MTA against Evans for disability discrimination, specifically for the comments made during her unemployment hearing and for not granting her a restricted duty position.

56. On or about August 21, 2019, in response to Sparks' disability discrimination complaint, the MTA directed Sparks submit a form – requesting the same reasonable accommodation – to the Director of Human Resources, Marelene Masiello.

57. Sparks was only provided the official reasonable accommodation request form after she complained about the discrimination more than a month later.

58. On or about August 26, 2019, Sparks sent an email to the EEO stating she had not received a response from HR and again attached the MTA's Human Resources Reasonable Accommodation request form.

59. Sparks remained on unpaid leave from the MTA.

60. On or about September 11, 2019, to avoid administrative termination due to inactivity and to return to work at the MTA, Sparks was forced to take a demotion to the Cleaner/Helper position.

61. Further, Sparks was forced to accept a pay cut in order to retain her employment with the MTA.

62. When Sparks did submit the accommodation form as instructed, instead of being granted the accommodation, she received a permanent demotion and a pay cut to Cleaner/Helper.

63. Other employees with disabilities, for instance, such as Jeffery Birch and Richard MacDonald were granted the Cleaner/Helper as an accommodation but were allowed to keep their Bus Operator pay.

64. On or about December 2019, Toni Dejani, a bus operator of middle eastern decent, requested an accommodation for his disability and was placed in the Division Shifter position.

65. From approximately September 2019 to August 2020, Sparks worked for the MTA in the Cleaner/Helper position.

66. On or about August 2020, Sparks made a new request for a reasonable accommodation to work in the Division Shifter Position based on a respiratory medical condition.

67. The MTA granted Sparks' reasonable accommodation request.

68. However, the MTA did not restore Sparks' Bus Operator title and instead kept Sparks at her reduced pay rate which she received in the Cleaner/Helper position.

69. On or about December 2019, Sparks applied for a promotion for the position of "Helper" – instead of "Helper/Cleaner."

70. In this position, Sparks would perform the same duties she had already been performing for MTA.

71. On or about February 17, 2022, based on the MTA's departmental evaluation and recommendation form, Sparks' promotion was denied once again because "employee has permanent medical restriction."

72. On or about February 23, 2022, Sparks filed an internal grievance – complaining about the disability discrimination once more.

73. On or about March 1, 2022, Sparks received a grievance response which indicated she was denied the position due to a pending disciplinary action.

74. The MTA changed their reasoning for the denial of Sparks' request from permanent medical

restriction to pending disciplinary action.

75. MTA retaliated against Sparks by unlawfully demoting her and reducing her pay rate.

Race Discrimination

76. In addition to the disability discrimination, Sparks was also discriminated against the Defendants because of her race.

77. Sparks was and is an African American.

78. The MTA preferred giving the Division Shifter position to non-African American employees.

79. Non-African American employees, who were similarly situated to Sparks and were also demoted, were able to keep their increased base salary of Bus Operator.

80. By way of example, Jeffrey Birch, a white male, and Richard Macdonald, who is also a white male, were able to kept their salary when they were demoted from bus operator position to the cleaner/helper position.

81. Additionally, from January 2019 to July 2020, at least five non-African American employees were granted the position of Division Shifter.

82. By way of example, William Coludro, Nicholas Hernandez and Jahaida Vazquez, who are all Hispanic Bus operators, were granted the Division Shifter Position.

83. Upon information and belief, the aforementioned employees performed the duties of Cleaner/Helper while being paid their Bus Operator pay.

84. On or around November 30, 2021, Bus operator Ann Delgado, a white female, applied for a reasonable accommodation at LGA Depot, which was approved by Evans.

85. Ann Delgado started working on December 6, 2021 in the cleaner helper position; however, she was able to keep her Bus Operator title and pay.

86. Sparks was treated differently because of her race when she was not offered the position of Division Shifter compared to her non-African American counterparts.

87. Further, Sparks was treated differently when she was not allowed to keep her salary compared to other Non-African American employees.

### FIRST CAUSE OF ACTION
### Discrimination in Violation of the ADA
*Against Defendant MTA only*

88. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

89. The American with Disabilities Act, as amended, 42 U.S.C § 12112(a) provides: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to… discharge of employees… and other terms, conditions and privileges of employment."

90. Defendants discriminated against Sparks on the basis of her disability in violation of the ADA.

91. As a direct and proximate result of Defendants' unlawful discriminatory conduct, Sparks has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

### SECOND CAUSE OF ACTION
### Retaliation in Violation of the ADA
*Against Defendant MTA only*

92. Plaintiff Sparks repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

93. By the actions described above, among others, Defendants have retaliated against Sparks in violation of the ADA, after and because she engaged in protected activity.

94. As a direct and proximate result of Defendants' unlawful discriminatory conduct, Sparks has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

## THIRD CAUSE OF ACTION
### Discrimination Pursuant to Title VII of the Civil Rights Act
*Against Defendant MTA only*

95. Plaintiff Sparks repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

96. By the actions described above, among others, Defendants have discriminated against Plaintiff Sparks because of her disability and race in violation of Title VII.

97. As a direct and proximate result of Defendants' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages.

## FOURTH CAUSE OF ACTION
### Retaliation Pursuant to Title VII of the Civil Rights Act
*Against Defendant MTA only*

98. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

99. By the actions described above, among others, Defendants have retaliated against Plaintiff in violation of Title VII for engaging in protected activity of complaining about the discrimination.

100. As a direct and proximate result of Defendants' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

## FIFTH CAUSE OF ACTION
### Discrimination Pursuant to the New York State Human Rights Law
*Against All Defendants*

101. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

102. Executive Law § 296 provides that it shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, genetic predisposition or carrier status, or marital status of

any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

103. Defendants engaged in an unlawful discriminatory practice in violation of the NYSHRL by discriminating against the Plaintiff because of her disability and race.

104. That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

### SIXTH CAUSE OF ACTION
**Retaliation Pursuant to the New York State Human Rights Law**
*Against All Defendants*

105. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

106. New York State Executive Law § 296 (7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

107. Defendants engaged in an unlawful discriminatory practice by retaliating and escalating the discrimination to which the Plaintiff was subjected, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendants.

108. Defendants engaged in an unlawful discriminatory practice by retaliating against the Plaintiff for making a complaint regarding Defendants' violation of New York State Executive Law.

109. That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

### SEVENTH CAUSE OF ACTION
**Discrimination Pursuant to the New York City Human Rights Law**
*Against All Defendants*

110. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs

were more fully set forth herein at length.

111. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

112. Defendants engaged in an unlawful discriminatory practice in violation of the NYCHRL by discriminating against the Plaintiff because of her disability and race.

113. That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## EIGHTH CAUSE OF ACTION
**Retaliation Pursuant to the New York City Human Rights Law**
*Against All Defendants*

114. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

115. The New York City Administrative Code Title 8, §8-107(1)(e) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

116. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, § 8-107(1)(e) by retaliating, continuing and escalating the discrimination to which the Plaintiff was subjected, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendants.

117. Defendants engaged in an unlawful discriminatory practice by retaliating against the Plaintiff for making a complaint regarding Defendants' violation of the NYCHRL.

118. That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court GRANT the following relief:

A. Declaring that the Defendants engaged in unlawful employment practice prohibited by federal and state common law, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000-e *et seq.,* New York State Executive Law §296 et. seq. and the New York City Administrative Code Title 8, §8-107 et. seq.; and that the Defendants harassed, discriminated against, and retaliated against Plaintiff on the basis of her disability and race, and awarding Plaintiff a recovery for damages sustained;

B. Awarding damages to the Plaintiff, retroactive to the date any such damages were initially incurred, for all lost wages, overtime pay, and benefits resulting from Defendants' unlawful employment practices in an amount that exceeds the jurisdictional limit of all lower courts;

C. Awarding Plaintiff Sparks compensatory damages for her mental and emotional injuries in an amount that exceeds the jurisdictional limit of all lower courts;

D. Directing Defendants to place Plaintiff in the position she would have occupied but for defendants' discriminatory and retaliatory and unlawful conduct and making the Plaintiff Sparks whole for all earnings and other benefits she would have received but for Defendants' discriminatory and retaliatory treatment, including, but not limited to, title, seniority status, wages and other lost benefits;

E. Awarding Plaintiff Sparks punitive damages;

F. Awarding Plaintiff Sparks attorney's fees, costs and expenses; and

G. Awarding Plaintiff such other relief as the Court may deem just and proper to remedy the Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: November 14, 2022
New York, New York

**Akin Law Group PLLC**

*/s/ Robert D. Salaman*
_____
Robert D. Salaman
45 Broadway, Suite 1420
New York, NY 10006
(212) 825-1400
rob@akinlaws.com

*Counsel for Plaintiff*